UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JAMES HEIRONIMUS, on behalf of himself and all others similarly situated, | § § § § | |
| Plaintiff, | § § | |
| v. | § § § | No. 4:17 – cv – 121 |
| CAVALRY PORTFOLIO SERVICES, LLC, and | § § § | CLASS ACTION |
| RAUSCH, STURM, ISRAEL, ENERSON & HORNIK, LLC | § § § | JURY DEMANDED |
| Defendants. | § § | |

## ORIGINAL COMPLAINT

### Introduction

1.  This is a consumer class action brought on behalf of consumers subjected to Defendants' violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, *et seq.* The FDCPA prohibits debt collectors from engaging in abusive, deceptive, and unfair collection practices.

### Jurisdiction and Venue

2.  This Court has federal question jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d).

3.  Venue is proper in this district under 28 U.S.C. § 1391(b), as the acts and transactions that give rise to this action occurred, in substantial part, in this

district and the interests of justice require maintenance of this action in this district.

## Parties

4. Plaintiff James Heironimus resides in this district.

5. Heironimus is a "consumer," as that term is defined by § 1692a(3) of the FDCPA.

6. Defendant Rausch, Sturm, Israel, Enerson & Hornik, LLC ("RSIEH") is a debt-collection law firm regularly engaged in the business of collecting debts in the State of Texas. RSIEH may be served with process through its registered agent in the State of Texas: Seung Chae, 15660 North Dallas Parkway, Suite 350, Dallas, Texas 75248.

7. RSIEH's principal place of business is located at 250 N. Sunnyslope Road, Suite 300, Brookfield, Wisconsin 53005.

8. RSIEH's principal purpose is the collection of debts using the mails and telephone.

9. RSIEH regularly attempts to collect debts alleged to be due another.

10. RSIEH is a "debt collector," as that term is defined by § 1692a(6) of the FDCPA.

11. Defendant Cavalry Portfolio Services, LLC ("Cavalry") is a business engaged in collecting debts in this state with its principal place of business located at 7 Skyline Drive, 3rd Floor, Hawthorne, New York 10532. Cavalry may be served

with process through its registered agent in the State of Texas: CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

12. The principal purpose of Cavalry is the collection of debts.

13. Cavalry regularly attempts to collect debts alleged to be due another.

14. Cavalry is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

15. Cavalry purchases the right to collect debts that are already in default, and then attempts to collect those debts.

16. Here, Cavalry purports to have purchased the right to collect a judgment debt taken against Heironimus, after that alleged debt had already gone into default.

17. The acts and omissions of the Defendants alleged herein were conducted by its employees acting within the scope of their actual or apparent authority.

18. The Plaintiff alleges that at all times herein mentioned, each of the Defendants were, and is now, the agent, servant, employee and/or other representative of the other Defendants, and in doing the things herein alleged, was acting in the scope, purpose and authority of such agency, service employment, and/or other representative capacity with the permission, knowledge consent and/or ratification of the other Defendants. Any reference hereinafter to "Defendant," or "Defendants," or "Debt collector," without further qualification is meant to refer to each and all defendants herein jointly and severally.

## Facts

19. RSIEH and Cavalry sought to collect a debt from Heironimus that was allegedly owed to "Please refer to original judgment Wells Fargo Bank, N.A.".

20. The alleged debt that RSIEH and Cavalry sought to collect from Heironimus arose out of transactions that were incurred primarily for personal, family or household purposes. Specifically, the debt arose out of judgment taken against Heironimus.

21. The alleged debt that RSIEH and Cavalry sought to collect from Heironimus is a "debt," as that term is defined by § 1692a(5) of the FDCPA.

22. On or about January 18, 2016, RSIEH wrote and sent to Heironimus by U.S. mail a collection or "dunning" letter (the "01/18/2016 Letter"), a copy of which is attached as Exhibit A, in an attempt to coerce Heironimus into paying the alleged debt.

23. Heironimus read the 01/18/2016 Letter shortly after receiving it.

24. This 01/18/2016 Letter was RSIEH and Cavalry's initial communication with Plaintiff.

25. Upon information and belief, this form of letter was RSIEH and Cavalry's initial communication with the other members of the Class.

26. In the reference field of the 01/18/2016 Letter, RSIEH indicates that the letter concerns:

> Re: JAMES HEIRONIMUS
> Creditor to Whom the Debt is Owed: Please refer to original judgment Wells Fargo Bank, N.A.
> Our File Number: [Redacted by Plaintiff]

Account #: [Redacted by Plaintiff]
Account Balance: $7,934.90

27. Upon information and belief, there is no judgment taken against Heironimus by Wells Fargo Bank, N.A.

28. Upon information and belief, Defendants send form letters containing language substantially similar or materially identical to that contained in Exhibit A to hundreds, if not thousands, of consumers in the State of Texas.

29. Defendants are regularly engaged in the business of collecting debts allegedly owed by consumers through collection letters and other correspondence.

30. Heironimus was injured by Defendants in that the 01/18/2016 Letter caused him worry and distress over a judgment taken against him by Wells Fargo Bank, N.A. when, in fact, Wells Fargo Bank, N.A. had never sued him.

31. Defendants followed up with two additional letters dated June 30, 2016, and September 1, 2016 – copies of which are attached as Exhibits B and C – both of which improperly identify the alleged "Creditor to Whom the Debt is Owed" as "Please refer to original judgment Wells Fargo Bank, N.A."

32. Because Heironimus and the other class members did not receive one of the key disclosures – the name of the current creditor – deemed relevant and important enough for Congress to specify must be sent within five days of the initial communication, they have suffered a concrete – *i.e.*, "real" – injury. *See Church v. Accretive Health, Inc.*, 654 Fed.Appx. 990 (11th Cir. 2016) (per curium; not selected for publication).

33. The invasion of the rights of Heironimus and the other class members to receive the disclosures is not hypothetical or uncertain; they did not receive information to which they are entitled. *Id.*

34. This injury is one that Congress has elevated to the status of a legally cognizable injury through the FDCPA. *Id.*

35. Accordingly, Heironimus has sufficiently alleged that he – and the class members – suffered a concrete injury, and thus, satisfies the injury-in-fact requirement. *Id.*

36. Moreover, the failure to give the name of the alleged current creditor gives rise to the very real danger of being unable to know whether to exercise the other Congressionally granted validation rights to dispute the validity of all or a portion of the debt and to demand the name and address of the original creditor, and also gives rise to the very real danger of not knowing who owns the alleged judgment, to whom payment is allegedly due, and to whom payment should be made.

37. Upon information and belief, no attorney conducted a meaningful attorney review before sending the letters attached as Exhibits A, B, and C.

38. Upon information and belief, Defendants send out hundreds of letters a year under RSIEH attorney letterhead without meaningful attorney review.

39. On information and belief, Defendants use a mechanized computer-driven process to send these letters, and most variable information (such as the name of the creditor, the alleged amount due, and the name of the consumer) is

inserted into pre-defined "fields" by a word-processor or other computer-driven document assembly software.

40. Further, upon information and belief, Plaintiff alleges that the information to be inserted in these fields, to generate these letters and complaints alleging fraudulent conveyances, is sent to consumers *en masse*, as electronically-stored information, *via* modem or other computer-readable format.

41. The letters and complaints are then created directly from this electronically stored information.

42. On information and belief, no attorney meaningfully reviews or authorizes any particular individual letter or complaint before it is sent.

43. Rather, the only attorney involvement is to review the form of the letter or complaint and to define some general parameters as to the intended recipients.

44. Based upon the boilerplate representations made in Exhibits A, B, and C, the fill-in-the-blanks nature of Exhibits A, B, and C, and the failure in all three letters to list the most basic piece of information required to be disclosed under the FDCPA – that is, the name of the current creditor – it is clear that no attorney had personally reviewed the particular circumstances of the alleged collection account before sending the letters attached as Exhibits A, B, and C.

45. The letters attached as Exhibits A, B, and C deceptively purport to be "from an attorney" when in fact the letters, which are on "RSIEH" attorney-letterhead, are not from an attorney in any meaningful sense.

46. No attorney reviews the file or determines the legal validity of the debt before the letters – in the form of Exhibits A, B, and C – are sent or before RSIEH interacts with consumers.

47. No attorney reviews the file or determines the legal validity of the allegations of indebtedness, or the party to whom the debt is allegedly owed, before the letters – in the form of Exhibits A, B, and C – are sent or before RSIEH interacts with consumers.

48. "RSIEH" is a collection agency masquerading as a law firm, which uses clerical workers, not attorneys, and false allegations of fraudulent conveyances contained in form letters and complaints, to collect debts using the power and leverage of a law license.

49. Cavalry, as a debt collector itself, is vicariously liable for any and all FDCPA violations committed by the debt collectors it employs – including the violations committed by RSIEH described in this Complaint.

50. Moreover, Cavalry is vicariously liable for RSIEH's FDCPA violations described in this Complaint, because, at all relevant times, Cavalry exercised control over RSIEH's debt-collection activities. Specifically, on information and belief, Cavalry exercised this control by requiring RSIEH to comply with detailed instructions and standard operating procedures as to each Cavalry account, which were embodied both in a "collections agreement" or other similar document in a "firm manual" or other similar document. Furthermore, on information and belief, Cavalry required RSIEH to use specific computer databases and networks, and

required RSIEH to link its databases and networks directly to Cavalry's own computer databases and networks, so that RSIEH and Cavalry could automatically share information and media (including collection letters) with each other, and so that Cavalry could monitor RSIEH's collection activities. Furthermore, on information and belief, Cavalry subjected RSIEH to regularly scheduled audits to ensure that RSIEH was complying with the detailed instructions and standard operating procedures promulgated by Cavalry. Furthermore, on information and belief, Cavalry required RSIEH to seek Cavalry's approval via email or telephone before deviating in any way from any of the detailed instructions or standard operating procedures promulgated by Cavalry.

51. Moreover, Cavalry is liable because its own acts and omissions directly caused the FDCPA violations described in this Complaint. Specifically, on information and belief, Cavalry itself provided (in electronic form) the variables that RSIEH used to populate the fields in the collection letters discussed above. Thus, on information and belief, Cavalry's own transmission of electronic information (along with RSIEH's failure to verify or even to visually check the information) caused the "Creditor to Whom the Debt is Owed" to be listed as "Please refer to original judgment Wells Fargo Bank, N.A."

# COUNT I
## Violations of Sections 1692e, f, and g of the Fair Debt Collection Practices Act Against Defendants Brought By James Heironimus, Individually, and on Behalf of a Class

52. Plaintiff hereby restates, realleges, and incorporates herein by reference all foregoing paragraphs as if set forth fully in this Count.

53. This Count is brought by Plaintiff, individually and on behalf of a class, consisting of consumers with Texas addresses who: (a) within one year prior to the filing of this action; (b) were sent a collection letter by Defendants; (c) in a form materially identical or substantially similar to the letter sent to the Plaintiff, attached hereto as Exhibit A – that is, identifying the creditor as "Please refer to original judgment Wells Fargo Bank, N.A." or "Please refer to original judgment" before the name of any alleged current creditor; and (d) the letter was not returned by the postal service as undelivered.

54. Under Federal Rule of Civil Procedure 23, a class action is appropriate and preferable in this case because:

  (A)  Based on the fact that the collection letter at the heart of this litigation is a mass-mailed form letter, the class is so numerous that joinder of all members is impractical.

  (B)  There are questions of law and fact common to the class that predominate over any questions affecting only individual class members. The principal question presented by this case is whether the letter sent by Defendant (Exhibit A) violated 15 U.S.C. §§ 1692e, f, and g of the FDCPA, and their subsections.

  (C)  The only individual issue is the identification of the consumers who were sent the letter (*i.e.* the class members), a matter capable of ministerial determination from Defendants' records.

(D) Plaintiff's claims are typical of those of the class members. All are based on the same facts and legal theories.

(E) Plaintiff will fairly and adequately represent the class members' interests and she has retained counsel experienced in bringing class actions and collection abuse claims.

55. A class action is superior for the fair and efficient adjudication of the class members' claims as Congress specifically envisioned class actions as a principal means of enforcing the FDCPA. *See* 15 U.S.C. 1692k. The members of the class are generally unsophisticated consumers, whose rights will not be vindicated in the absence of a class action. Prosecution of separate actions by individual members of the classes would also create the risk of inconsistent or varying adjudications resulting in the establishment of inconsistent or varying standards for the parties and would not be in the interests of judicial economy.

56. If the facts are discovered to be appropriate, Plaintiff will seek to certify the class under Rule 23(b)(3) of the Federal Rules of Civil Procedure.

57. By sending the 01/18/2016 Letter, Defendant violated 15 U.S.C. § 1692g of the FDCPA, by failing to provide the name of the current creditor. "Please refer to original judgment Wells Fargo Bank, N.A." is not the name of any entity that is owed a debt by Heironimus. Moreover, the designation set forth by Defendants, and the use of reference to an "original judgment Wells Fargo Bank, N.A." is confusing and deceptive to the least sophisticated consumer, who could be mislead both as to the name of the current creditor and as to the name of the original judgment creditor. Thus, this is also a false and deceptive act under 15

U.S.C. § 1692e and e(10), and an unfair and unconscionable act under 15 U.S.C. §§ 1692f.

58. Defendants violated 15 U.S.C. §§ 1692e, -e(3), and –e(10) of the FDCPA by sending the computer-generated collection letters, copies of which are attached as Exhibit A, B, and C, which both appear on attorney letterhead and assert that Wells Fargo Bank, N.A. obtained a judgment against Plaintiff, without having conducted any meaningful attorney review. Defendants' violations of 15 U.S.C. §1692, *et seq.*, render it liable to Plaintiff and the members of the class.

59. As a result of Defendants' deceptive and unfair debt collection practices, Defendants are liable to the Plaintiff and the members of the class.

### Demand for Jury Trial

60. Plaintiff demands a trial by Jury.

WHEREFORE, Plaintiff James Heironimus respectfully requests that this Court grant the following relief in his favor, and on behalf of the members of the Class, against all Defendants as follows:

    (A)    Statutory damages as provided by § 1692k of the FDCPA;

    (B)    Attorneys' fees, litigation expenses and costs;

    (C)    A declaration that Defendants' form letters, represented by the form sent to the Plaintiff on or about January 18, 2016, violate the FDCPA; and

    (D)    Any other relief that this Court deems appropriate under the circumstances.

Respectfully submitted,

/s/ Dana Karni
Dana Karni
Karni Law Firm, P.C.
SDTX #592484
Texas Bar # 24044379
4635 Southwest Freeway
Suite 645
Houston, Texas 77027
Tel: 713-552-0008
Fax: 713-454-7247
Dana@KarniLawFirm.com

/s/ Brian L. Bromberg
Brian L. Bromberg
Bromberg Law Office, P.C.
New York Bar # 2441947
26 Broadway, 21st Floor
New York, NY 10004
Tel: (212) 248-7906
Brian@BrombergLawOffice.com
*(Pending admission to SDTX)*

ATTORNEYS FOR PLAINTIFF

*Original Complaint*
Page 13 of 13