UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JAMES HEIRONIMUS, | § | |
| on behalf of himself and | § | |
| all others similarly situated, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | No. 17-CV-121 |
| | § | |
| CAVALRY PORTFOLIO | § | CLASS ACTION |
| SERVICES, LLP, and | § | |
| | § | |
| RAUSCH, STURM, ISRAEL, | § | |
| ENERSON & HORNIK, LLC | § | |
| | § | |
| Defendants. | § | |

### Corrected Plaintiff's Memorandum in Support of
### Final Approval of the Class Action Settlement

Attorneys for Plaintiff and the Class

Dana Karni
Karni Law Firm, P.C.
SDTX #592484
Texas Bar # 24044379
4635 Southwest Freeway #645
Houston, Texas 77027
Tel:  713-552-0008
Fax:  713-454-7247
Dana@KarniLawFirm.com

Brian L. Bromberg
Bromberg Law Office, P.C.
SDTX # 3018448
26 Broadway, 21st Floor
New York, NY 10004
Tel: (212) 248-7906
Fax: (212) 248-7908
Brian@BrombergLawOffice.com

# Table of Contents

Table of Authorities ............................................................................................................ ii

Introduction and Class Member Response to the Notice of Settlement .................................... 1

I.    Background and Summary of Settlement ........................................................................ 1

II.    Factors Bearing on Final Approval ............................................................................ 4

III.    The Notice was Reasonable and the Best Practicable ............................................... 6

IV.    The Settlement is Fair, Reasonable, and Adequate .................................................. 7

V.    No one has objected or opted out ................................................................................ 10

VI.    Award to representative Plaintiffs ............................................................................ 10

VII.    *Cy Pres* Award ......................................................................................................... 11

VIII.    The attorney fees and costs sought by Plaintiff on behalf of the class are fair and reasonable ...................................................................................................................... 11

    A.    In awarding fees and costs, Courts should bear in mind Congress' goals in mandating fee-shifting under the FDCPA ...................................................................... 12

    B.    FDCPA fee standards ........................................................................................... 13

    C.    The proposed fee is reasonable ........................................................................... 13

    D.    Plaintiff's attorneys' hourly rates are reasonable ............................................. 16

    E.    Attorney fees incurred in connection with the fee petition are recoverable ......... 17

    F.    An upward adjustment should be made, but is not necessary here because Plaintiff's fees and costs exceed the agreed-upon amount ................................................................ 17

        1. The time and labor required. ............................................................................ 19

        2. The novelty and difficulty of the questions. .................................................... 19

        3. The skill requisite to perform the legal services properly. ............................... 20

        4. The preclusion of other employment. ............................................................. 20

        5. The customary fee for like work in the community. ........................................ 21

        6. Whether the fee is fixed or contingent. ........................................................... 21

        7. Time limitations imposed by the client or the circumstances. ......................... 23

        8. The amount involved and the results obtained. ............................................... 23

        9. The experience, reputation and ability of the attorney. ................................... 24

        10. The undesirability of the case. ...................................................................... 25

        11. The nature and length of the professional relationship with the client. .......... 25

        12. Awards in similar cases. ................................................................................ 26

Conclusion ........................................................................................................................ 27

Table of Authorities

Page(s)

**Cases**

*In re Abrams & Abrams,*
605 F.3d at 245......................................................................24

*Algie v. RCA Global Commc'ns, Inc.,*
891 F. Supp. 875 (S.D.N.Y. 1994)........................................16

*Alvarado Partners, L.P. v. Mehta,*
723 F. Supp. 540 (D. Colo. 1989)........................................11

*Amchem Products, Inc. v. Windsor,*
521 U.S. 591 (1997)..............................................................12

*Bailey v. District of Columbia,*
839 F. Supp. 888 (D.D.C. 1993).....................................16, 21

*Bankston v. State of Illinois,*
60 F.3d 1249 (7th Cir. 1995)................................................16

*In re Beverly Hills Fire Litig.,*
639 F.Supp. 915 (E.D.Ky, 1986).........................................19

*Blum v. Stenson,*
465 U.S. 886 (1984)......................................15, 16, 17, 23

*Brinker v. Giuffrida,*
798 F.2d 661 (3d Cir. 1986)................................................18

*Cardiology Associates, P.C. v. National Intergroup Inc.,*
1987 WL 7030 (S.D.N.Y. 1989)..........................................10

*In re Cenco Inc. Sec. Litig.,*
519 F.Supp. 322 (N.D.Ill. 1981).........................................19

*In re Cendent Corp. PRIDES Litig.,*
243 F.3d 722 (3d Cir. 2001)................................................19

*Chambless v Masters Mate & Masters Pension Plan,*
885 F.2d 1053 (2d 1989).................................................16, 17

ii

*Cohen v. West Haven Bd. of Police Com'rs*,
   638 F.2d 496 (2d Cir. 1980) ...................................................................15

*In re Corrugated Container Antitrust Litigation*,
   643 F.2d 195 (5th Cir. 1991) ...................................................................5

*DiFilippo v. Morizio*,
   759 F.2d 231 (2d Cir. 1985) .................................................15, 17, 21

*Gary v. Kason Credit Corp.*,
   No. 95-CV-54 (D. Conn. Oct. 21, 1998)................................................16

*Garza v. Sporting Goods Properties, Inc.*,
   No. CIV. A. SA–93–CA–108, 1996 WL 56247 (W.D.Tex. Feb. 6,
   1996) ............................................................................................................6

*Gates v. Deukmejian*,
   987 F.2d 1392 (9th Cir. 1992) ...............................................................18

*Hensley v. Eckerhart*,
   461 U.S. 424, 103 S.Ct. (1983) ..............................................................15

*Johnson v. Georgia Hwy. Exp., Inc.*,
   488 F.2d 714 (5th Cir. 1974), abrogated on other grounds by
   *Blanchard v. Bergeron*, 489 U.S. 87 (1989).................................. *passim*

*Johnson v. State of Miss.*,
   606 F.2d 635 (5th Cir. 1979) ..................................................................18

*In re Katrina Canal Breaches Litig.*,
   628 F.3d 185 (5th Cir.2010) ....................................................................3

*Lemire v. Wolpoff & Abramson, P.C.*,
   D. Conn., Docket No. 08-cv-249(CSH)..................................................23

*McDonald v. Pension Plan of the NYSA-ILA Pension Trust Fund*,
   450 F.3d 91 (2d Cir. 2006) ......................................................................17

*In re MicroStrategy, Inc. Securities Litig.*,
   148 F. Supp. 2d at 667-68.......................................................................11

*Miele v. New York State Teamsters Conference Pension & Retirement
   Fund*,
   831 F.2d 407 (2d Cir. 1987) ...................................................................16

*Miller v. Republic Nat. Life Ins. Co.*,
  559 F.2d 426 (5th Cir. 1977)....................................................................6

*Missouri v. Jenkins by Agyei*,
  491 U.S. 274 (1989)...............................................................................15

*Morgan v. Credit Adjustment Board*,
  1998 U.S. Dist. Lexis 8135....................................................................21

*New England Carpenters Health Benefits Fund v. First Databank, Inc.*,
  No. 05-11148, 2009 WL 2408560 (D. Mass. Aug. 3, 2009) ....................19

*Newby v. Enron Corp.*,
  394 F.3d 296 (5th Cir. 2004)...................................................................8

*In re Nissan Motor Corp. Antitrust Litigation*,
  552 F.2d 1088 (5th Cir. 1977).................................................................7

*Parker v. Anderson*,
  667 F.2d 1204 (5th Cir. 1982).................................................................8

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985)................................................................................4

*Reed v. General Motors Corp.*,
  703 F.2d 170 (5th Cir. 1983)...................................................................8

*Ruiz v. McKaskle*,
  724 F.2d 1149 (5th Cir.1984)..................................................................9

*San Francisco NAACP v. San Francisco Unified Sch. Dist.*,
  59 F. Supp. 2d 1021 (N.D. Cal. 1999)....................................................5

*Sykes v Mel Harris and Associates, LLC*,
  No. 09-CV-8486, 2016 WL 3030156, . (S.D.N.Y. May 24, 2016)...........10

*In re Train Derailment Near Amite, La.*,
  MDL 1531, 2006 WL 1561470 (E.D.La. May 24, 2006).........................9

*Turner v. Murphy Oil USA, Inc.*,
  472 F.Supp.2d 830 (E.D.La. 2007) ........................................................8

*United States Football League v. National Football League*,
  887 F.2d 408 (2d Cir. 1989) .................................................................18

iv

*Venes v. Professional Service Bureau, Inc.*,
    353 N.W.2d 671 (Minn. App. 1984) ......................................................14

*Vizcaino v. Microsoft*,
    290 F.3d 1043 (9th Cir. 2002) .............................................................19

*Withers v. Eveland*,
    997 F. Supp. .......................................................................................21

## Statutes

Consumer Credit Protection Act, 15 U.S.C. §§1601-1693r .......................24

Fair Debt Collection Practices Act, 15 U.S.C. §1692, *et seq.* ............... *passim*

Fair Credit Reporting Act, 15 U.S.C. §1681, *et seq.* ..................................24

Federal Odometer Act, 49 U.S.C. Chapter 327 ........................................26

## Other Authorities

Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 11.41 (4th
    ed. 2002) .............................................................................................5

Fed. R. Civ. P. 23 ................................................................................ *passim*

Laura B. Bartell, *Taxation of Costs and Awards of Expenses in Federal
    Court*...................................................................................................18

*New York Times*, September 19, 2017, "Harvey and Irma Wiped Out
    Our Kitchens. Still, We Cook." ............................................................25

**Introduction and Class Member Response to the Notice of Settlement**

Plaintiff James Heironimus did a fine job here. Due to his diligence, 134 class members are going to receive $100 each, if this settlement is approved. Accordingly, under Fed. R. Civ. P. 23, Plaintiff moves this Court for final approval of the proposed class-action settlement. As explained below, notice has been provided to the Class Members in accordance with the Court's Preliminary Approval Order and none of the class members has opted out or objected. This substantial recovery for the Class Members merits final approval of the settlement.

## I.   Background and Summary of Settlement

On January 16, 2017, Plaintiff filed this case on behalf of himself and a class of similarly situated individuals, alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692, *et seq.* Plaintiff alleged that Defendants Cavalry Portfolio Services, LLC and Rausch, Sturm, Israel, Enerson & Hornik, LLC, violated the FDCPA by failing to provide the name of the current alleged creditor, Cavalry Portfolio Services, LLC, in its initial written communications with Mr. Heironimus and the Class Members. Instead, Defendants included an odd statement that recipients of the letter should "Please refer to original judgment Wells Fargo Bank, N.A." By failing to give the name of the current creditor, Defendants violated 15 U.S.C. §1692g of the FDCPA, which requires that this information be given in writing within five days of a debt-collector's initial communication with a consumer.

Shortly after filing, the parties began lengthy settlement discussions that

culminated in a Class Action Settlement Agreement and Release (the "Agreement"), which is on file as ECF# 13-1. Essentially, after extensive arm's-length negotiations, the parties agreed to a statewide class settlement for 134 class members for $100.00 per class member.

In addition to this settlement fund, Defendant agreed to pay the cost of class notice and administration, the individual award to the Class Representatives, and attorney fees and costs for Class Counsel. The settlement agreement permits class counsel to petition for fees and costs up to $25,000. The proposed individual award of $4,000 to the Class Representative is based on his involvement in litigating and negotiating the settlement.

Under Fed. R. Civ. P. 23(e), Plaintiffs – with Defendants' consent and for settlement purposes only – moved for class certification and preliminary approval of the proposed class action settlement. Specifically, Plaintiff requested that the Court certify the following proposed class:

> All individuals in the United States to whom during the period from January 16, 2016, through the date of preliminary approval, Rausch, Sturm, Israel, Enerson & Hornik, LLC sent a letter substantially similar to Exhibit A to Plaintiffs Complaint and whose letter was not returned as undeliverable.

On May 1, 2018, the Court granted preliminary approval of the Settlement and scheduled a Fairness Hearing for August 27, 2018.[1]

---

[1] Dkt. 15.                                    2

Due process, in the class action context, is satisfied if the notice provides class members with the "information reasonably necessary for them to make a decision whether to object to the settlement."[2] Here, the Parties agreed to direct-mail notice designed to reach all the Class Members. Defendants assembled a class list using the last known physical addresses of those Class Members as reflected in Defendants' business records. Defendants then stuffed the envelopes and gave them to Plaintiff's attorney, Dana Karni, to physically deposit in a mailbox, which she did. The class list identified 134 consumers to whom Defendants sent the same or similar collection letters at issue in this matter. As detailed in the Declarations of Dana Karni and Emanuel Newburger, notice of the class action settlement was mailed to all 134 Class Members in accordance with the Court's Preliminary Approval Order.[3]

The Supreme Court has concluded that direct notice satisfies due process.[4] In sum, the Parties have complied fully with the Court's Preliminary Approval Order and have taken reasonable steps to ensure that the Class Members were notified –

---

[2] *In re Katrina Canal Breaches Litig.*, 628 F.3d 185, 197 (5th Cir.2010); *see also* Wal–Mart Stores, 396 F.3d at 114 (explaining that "the settlement notice must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings" (internal quotation marks omitted)); AGGREGATE LITIGATION § 3.04(a) ("The purpose of a notice of a proposed class settlement is to set forth the major contours of the proposal and to inform class members of their right to attend the fairness hearing and to lodge written objections by a prescribed date should they so desire.").

[3] Karni Declaration at ¶9.                        3

[4] *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812-13 (1985).

in the best and most direct manner possible – of the Settlement's terms and benefits.

## II.    Factors Bearing on Final Approval

The Parties seek, under the terms of the Court's Preliminary Approval Order and federal law, final approval of the Settlement. The Settlement is the result of litigation, followed by lengthy settlement negotiations conducted at arm's length. Most significantly, the Settlement provides significant monetary benefit to the Class Members.

A class settlement, and subsequent dismissal of the case, requires Court approval.[5] The process for that approval is discussed generally in Rule 23(e), which provides, in relevant part:

> (e) Settlement, Voluntary Dismissal, or Compromise.
>
> The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval. The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:
>
> (1) The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.
>
> (2) If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate. . . .[6]

Rule 23(e) thus imposes two basic requirements on the parties and on the Court before the approval of a class settlement and dismissal. First, the Court must

---

[5] Fed. R. Civ. P. 23(e)(1)(A).
[6] Fed. R. Civ. P. 23(e).                4

determine that notice was directed "in a reasonable manner to all class members."[7] Second, the Court must determine that the settlement "is fair, reasonable, and adequate."[8] Plaintiffs address these requirements *seriatim*.

Federal jurisprudence strongly favors resolution of class actions through settlement.[9] Federal Rule of Civil Procedure 23 requires Court review of the resolution of a class action such as this one. Specifically, the Rule provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."[10] "The reason the court is called on to review a settlement is to protect the rights of the many absent class members who were not involved in the negotiations leading to settlement."[11] The Court may approve a settlement only after a hearing and on finding that it is "fair, reasonable, and adequate."[12]

"The approval of settlements in class actions is left to the sound discretion of the district court."[13] Additionally, there is a strong presumption in favor of finding the settlement fair.[14] The proposed settlement is not required to "achieve some

---

[7] Fed. R. Civ. P. 23(1).
[8] Fed. R. Civ. P. 23(2).
[9] *San Francisco NAACP v. San Francisco Unified Sch. Dist.*, 59 F. Supp. 2d 1021, 1029 (N.D. Cal. 1999); *see also* Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 11.41 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy.")
[10] Fed. R. Civ. P. 23(e).
[11] *In re Corrugated Container Antitrust Litigation*, 643 F.2d 195, 225 (5th Cir. 1991).
[12] Fed. R. Civ. P. 23(e)(2).
[13] *Miller v. Republic Nat. Life Ins. Co.*, 559 F.2d 426 (5th Cir. 1977).
[14] *Garza v. Sporting Goods Properties, Inc.*, No. CIV. A. SA–93–CA–108, 1996 WL 56247, at *11 (W.D.Tex. Feb. 6, 1996).    5

hypothetical standard constructed by imagining every benefit that might someday be obtained in contested litigation."[15] Rather, "[c]ompromise is the essence of settlement, and the Court may rely on the judgment of experienced counsel for the parties."[16]

### III.   The Notice was Reasonable and the Best Practicable

In a settlement class maintained under Rule 23(b)(3), class notice must meet the requirements of both Federal Rules of Civil Procedure 23(c)(2) and 23(e). Rule 23(e) specifies that "[n]o class action may be 'dismissed or compromised without [court] approval,' preceded by notice to class members."[17] Rule 23(c)(2) requires that notice to the class must be "the best practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."[18] The Rule also requires that the notice inform potential class members that (1) they have an opportunity to opt out; (2) the judgment will bind all class members who do not opt out or appear through counsel.[19] The Court must consider the mode of dissemination and the content of the notice to assess whether such notice was sufficient.[20]

"In every case, reasonableness is a function of anticipated results, costs, and amount involved."[21] The Parties' efforts to provide Class Members with Notice of

---

[15] *Id.* (internal quotation omitted).

[16] *Id.*

[17] Fed. R. Civ. P. 23(e).

[18] Fed. R. Civ. P. 23(c).

[19] *Id.*

[20] *See Manual for Complex Litigation* (Fourth) § 21.312 (2004).

[21] *In re Nissan Motor Corp. Antitrust Litigation*, 552 F.2d 1088, 1099 (5th Cir. 1977).

the Class Action demonstrate clearly that they were the best notice practicable under the circumstances given: (a) the available information; (b) the possible identification methods; (c) the number of class members; (d) the amount of the settlement; (e) the value to the class as a whole by holding up the settlement process for the other class members; (f) the significant additional costs to class members; and (g) the anticipated results of further identification efforts. Thus, the Court should find that the Notice of the Class Action (and process followed as described above) satisfies Rule 23.

## IV.   The Settlement is Fair, Reasonable, and Adequate

Under Rule 23(e)(2), the Court must determine whether the settlement is fair, reasonable, and adequate. The approval of a proposed settlement agreement is in the sound discretion of the Court.[22]

The Fifth Circuit, in *Reed v. General Motors Corp.*, has identified six factors to be considered in analyzing the fairness, reasonableness, and adequacy of a class settlement under Rule 23(e).[23] These six "*Reed* factors" are:

> (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members.[24]

---

[22]*Parker v. Anderson*, 667 F.2d 1204, 1209 n. 5 (5th Cir. 1982).

[23] *See Newby v. Enron Corp.*, 394 F.3d 296, 301 (5th Cir. 2004); *Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983).

[24] *Reed*, 703 F.2d at 172 (citing *Parker*, 667 F.2d at 1209).

In balancing the six factors, "absent fraud or collusion, the most important factor is the probability of the plaintiffs' success on the merits."[25] A proposed class action settlement is considered presumptively fair where there is no evidence of collusion and the parties, through capable counsel, have engaged in arm's length negotiations.[26]

Sufficient information was exchanged for the Parties to discuss Settlement. Further, the case was founded upon FDCPA claims with which Plaintiff's counsel was familiar, having prosecuted numerous similar matters against other defendants.[27] The Parties fairly reached the Settlement after engaging, through counsel, in informal discovery to determine the class size and other key information needed to move for class certification or engage in settlement discussions.

Although Plaintiff believes liability to be strong, Defendant denies liability. If tried, Plaintiff would bear the burden of establishing that Defendant's collection letter violated the FDCPA.  Defendant vigorously denies any wrongdoing, has

---

[25] *Parker*, 667 F.2d at 1209.

[26] *See Turner v. Murphy Oil USA, Inc.*, 472 F.Supp.2d 830, 843 (E.D.La. 2007) ("The public interest favoring settlement is especially apparent in the class action context where claims are complex and may involve a large number of parties, which otherwise could lead to years of protracted litigation and sky-rocketing expenses."); *In re Train Derailment Near Amite, La.*, MDL 1531, 2006 WL 1561470, at *19 (E.D.La. May 24, 2006) ("that a class action settlement is reached after arms' length negotiations by experienced counsel generally gives rise to a presumption that the settlement is fair, reasonable, and adequate"); *see also Ruiz v. McKaskle*, 724 F.2d 1149, 1152 (5th Cir.1984) ("trial court 'should be hesitant to substitute its own judgment for that of counsel' " when the settlement has been reached at arm's length without fraud or collusion) (citations omitted).

[27] *See* accompanying Declaration of Brian L. Bromberg, dated August 24, 2018.

asserted numerous defenses, and maintains that the letter that is the subject of this case comply in all respects with the FDCPA.

The settlement process itself was arm's-length and fair. Class counsel also satisfies the procedural fairness requirement of competent representation. Class counsel has considerable experience in this field and has litigated or is currently litigating numerous class actions under the FDCPA.

Also contributing to the fairness analysis is the fact that the class has overwhelmingly supported the settlement. No class members have objected and no class members have filed exclusions requests. Courts can consider the lack of class member opposition in determining whether a class settlement should be approved.[28]

Finally, weighing most heavily in favor of approval is that a class recovery of $100 to each Class Member is one of the larger statutory damage recoveries that Class Counsel knows of in a class action brought under the FDCPA.[29] And Class Counsel have, between them, many years of practicing law and, more particularly, consumer law.[30]

By its terms, the Settlement provides substantial consideration to the Class Members. The Settlement is therefore fair, reasonable, and an excellent result for the class. Additionally, the case was defended by opponents with considerable

---

[28] *Sykes v Mel Harris and Associates, LLC*, No. 09-CV-8486, 2016 WL 3030156, at *12. (S.D.N.Y. May 24, 2016) (citing, *inter alia*, *Newberg on Class Actions* § 13:54 (5th ed.) ("[I]f only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.")).
[29] *See* Bromberg Decl.
[30] *Id.*

9

experience and prior success; and obtaining a jury determination that the alleged violation was significant enough to warrant maximum statutory damages would always remain a challenge for Plaintiffs in this case. "Thus, the old adage, 'a bird in hand is worth two in the bush' applies with particular force in this case."[31]

Finally, the Court must consider it an important statement that only a handful of Class Members have objected to the Settlement. The Settlement has to be seen as a significant success. "Such a lack of opposition to the partial settlement strongly supports a finding of adequacy, for 'the attitude of the members of the Class, as expressed directly or by failure to object, after notice to the settlement is a proper consideration for the trial court.'"[32]

## V.    No one has objected or opted out

That no one has objected or opted out is a strong indication that the settlement should be approved.

## VI.    Award to representative Plaintiffs

Plaintiff requests, and Defendant has agreed not to object to, a personal award of $4,000 to Plaintiff for the settlement of his individual claims and in

---

[31] *Cardiology Associates, P.C. v. National Intergroup Inc.*, 1987 WL 7030, at *2 (S.D.N.Y. 1989) (concluding that because continued prosecution of the action would have been expensive and time-consuming, and would have involved substantial risks, "it [was] not unreasonable for the plaintiff class to take a 'bird in the hand'"); *see also Alvarado Partners, L.P. v. Mehta*, 723 F. Supp. 540, 547 (D. Colo. 1989) (noting that "[i]t has been held prudent to take 'a bird in the hand instead of a prospective flock in the bush'" in weighing the value of an immediate recovery against "the mere possibility of future relief after protracted and expensive litigation").

[32] *In re MicroStrategy, Inc. Securities Litig.*, 148 F. Supp. 2d at 667-68 (quoting *Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir. 1975)).

recognition of his services as the Class Representative. This award is warranted because of the Class Representative's involvement in this case and commitment to following up with counsel to assure that they were actively prosecuting this case. In addition, Plaintiff was actively involved not only in filing and litigating this case, but in negotiating the settlement. Most importantly, however, the awards are, in part, to compensate Plaintiff for his individual claims against Defendant. In sum, Plaintiff has been a model class representative, and such awards are both reasonable and of the type commonly approved.[33]

## VII.  *Cy Pres* Award

Any funds from settlement checks un-cashed (*i.e.*, checks not cashed within 90 days of the date on which they were mailed to Class Members) or other undistributed funds shall be awarded to Lone Star Legal Aid.

## VIII.  The attorney fees and costs sought by Plaintiff on behalf of the class are fair and reasonable

Plaintiff, on behalf of the class, seeks an agreed-upon recovery of up to $25,000 for attorney fees and costs. This sum was only discussed and negotiated after the parties had reached agreement on what was being paid to the class and then on what was being paid to Plaintiff.[34]

Under *Amchem Products, Inc. v. Windsor*,[35] the Court must ensure that the payment is fair and reasonable. Congress enacted the FDCPA more than three

---

[33] *See* Bromberg Decl.
[34] *See* Bromberg Decl.                    11
[35] *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997).

decades ago because of "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices" that harm the marketplace economy by "contribut[ing] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasion of individual privacy."[36] Congress found that existing laws and procedures were "inadequate to protect consumers" and "means other than misrepresentation or other abusive debt collection techniques are available for the effective collection of debts."[37] Congress encouraged consumers to bring FDCPA actions before Federal Article III judges by eliminating any "amount in controversy" requirement.[38] Congress also fostered enforcement of the FDCPA by enacting statutory damages and mandating that debt collectors pay "reasonable attorney's fees as determined by the court."[39]

### A. In awarding fees and costs, Courts should bear in mind Congress' goals in mandating fee-shifting under the FDCPA

Congress enacted the FDCPA more than three decades ago because of "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices" that harm the marketplace economy by "contribut[ing] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasion of individual privacy."[40] Congress found that existing laws and procedures were "inadequate to protect consumers" and "means other than misrepresentation or

---

[36] 15 U.S.C. § 1692(a).
[37] 15 U.S.C. § 1692(b) and (c).
[38] 15 U.S.C. § 1692k(d).
[39] 15 U.S.C. § 1692k(a)(3).
[40] 15 U.S.C. § 1692(a).

other abusive debt collection techniques are available for the effective collection of debts."[41] Congress encouraged consumers to bring FDCPA actions before Federal Article III judges by eliminating any "amount in controversy" requirement.[42] Congress also fostered enforcement of the FDCPA by enacting statutory damages and mandating that debt collectors pay "reasonable attorney's fees as determined by the court."[43]

### B. FDCPA fee standards

Attorney fees and costs are recoverable to consumers under the FDCPA.[44] Civil suits will deter abusive practices only if it is economically feasible for consumers to bring them. "Unless consumers can recover attorney's fees, it may not be possible for them to pursue small claims. . . . Congress recognized this problem and specifically provided for the award of attorney fees to successful plaintiffs."[45]

### C. The proposed fee is reasonable

The 12 "*Johnson* factors" used in this Circuit to calculate a "presumptively reasonable fee" when petitioning for fees under a lodestar analysis.[46] The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the

---

[41] 15 U.S.C. § 1692(b) and (c).

[42] 15 U.S.C. § 1692k(d).

[43] 15 U.S.C. § 1692k(a)(3).

[44] 15 U.S.C. § 1692k(a)(3) ("[I]n the case of any successful action to enforce the foregoing liability, [any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of] the costs of the action, together with a reasonable attorney's fee as determined by the court.")

[45] *Venes v. Professional Service Bureau, Inc.*, 353 N.W.2d 671 (Minn. App. 1984).

[46] *Johnson v. Georgia Hwy. Exp., Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), abrogated on other grounds by *Blanchard v. Bergeron*, 489 U.S. 87, 92–93 (1989).

questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount of time involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.[47]

There is no strict formula as to how these factors are applied. Once a figure for attorney fees is calculated using the *Johnson* factors, that amount becomes the "lodestar" which can then be adjusted upwards or downwards, again using the *Johnson* factors.[48] "[M]any of those factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate."[49] If the lodestar figure is properly calculated, adjustment will be unnecessary in most cases. There is a strong presumption that the lodestar figure (reasonable hours multiplied by a reasonable rate) represents a reasonable fee.[50] Currently prevailing marketplace rates establish the lodestar amount.[51] "The district court may not reduce the established market rate by some factor that it believes accounts for

---

[47] *Id.* at 717-19.
[48] *Hensley v. Eckerhart,* 461 U.S. 424, 433-34, 103 S.Ct. at 1939-40 (1983).
[49] *Id.* at 434 n.9, 103 S.Ct. at 1940 n. 9.
[50] *Blanchard*, 489 U.S. at 95, quoting *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 656 (1986).
[51] *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 283 (1989); *Blum v. Stenson*, 465 U.S. 886, 895 (1984); *DiFilippo v. Morizio*, 759 F.2d 231, 235 (2d Cir. 1985) (rejecting 46 hours on pretrial memo and 42 hours on fee application); *Cohen v. West Haven Bd. of Police Com'rs*, 638 F.2d 496, 506 (2d Cir. 1980).

differences between large firms and small firms. Lawyers of common expertise and experience in the same market are entitled to the same rate."[52]

District courts should not treat an attorney's status as a solo practitioner as grounds for an automatic reduction in the reasonable hourly rate. Cases suggest that in determining the relevant "market," a court may look to rates charged by those similarly situated, including looking to the rates charged by large- or medium-sized law firms.[53] But whether or not the aforementioned premise – that the bigger the firm the higher the attorneys' hourly rates charged – is correct, and even assuming that solo practitioners of equal skill, expertise and reputation, charge less than those at large- or medium-sized firms, courts should not automatically reduce the reasonable hourly rate based solely on an attorney's status as a solo practitioner. Overhead is not a valid reason for why certain attorneys should be awarded a higher or lower hourly rate.[54] Rather, overhead merely helps account for why some attorneys charge more for their services. Indeed, it may be that in certain niche practice areas, attorneys of the highest "skill, expertise, and reputation" have decided to maintain a solo practice instead of affiliating themselves with a firm. The

---

[52] *Bankston v. State of Illinois*, 60 F.3d 1249, 1255-56 (7th Cir. 1995); *Bailey v. District of Columbia*, 839 F. Supp. 888, 891 (D.D.C. 1993) (no distinction between solo and large firm rate); *Gary v. Kason Credit Corp.*, No. 95-CV-54 (D. Conn. Oct. 21, 1998) (rejecting "overhead" argument).
[53] *See, e.g.*, *Chambless v Masters Mate & Masters Pension Plan*, 885 F.2d 1053, 1058-59 (2d 1989); *Algie v. RCA Global Commc'ns, Inc.*, 891 F. Supp. 875, 895 (S.D.N.Y. 1994).
[54] *Miele v. New York State Teamsters Conference Pension & Retirement Fund,* 831 F.2d 407, 409 (2d Cir. 1987); *Blum*, 465 U.S. at 895-96 (rejecting the Solicitor General's suggestion that fees awarded to non-profit legal aid societies be based on a "cost-related standard").                    15

reasons for doing so may be numerous, including the inherent problems of higher overhead, fee-sharing, and imputed conflicts of interest. The focus of the inquiry into the reasonable hourly rate must instead be determined by reference to "prevailing [rates] in the community for similar services by lawyers of reasonably comparable skill, expertise, and reputation." [55] Working as a solo practitioner may be relevant to defining the market,[56] but it would be error to use an attorney's solo status as an automatic deduction or shortcut for determining the reasonable rate.[57]

While the Court has discretion to determine the proper fee, "the latitude of its discretion is narrowed by a presumption that successful [litigants] should recover reasonable attorney's fees unless special circumstances render such an award unjust. . . . Furthermore, where, as here, the party achieves success on the merits, an award of all reasonable hours at a reasonable hourly rate, *i.e.*, the lodestar figure, is presumptively appropriate."[58] "[A] party advocating the reduction of the lodestar amount bears the burden of establishing that a reduction is justified."[59]

### D.  Plaintiff's attorneys' hourly rates are reasonable

As set forth in the accompanying declarations from Class Counsel and from

---

[55] *Blum*, 465 U.S. at 895, n.11; *Chambless*, 885 F.2d at 1058-59.

[56] *See Chambless*, 885 F.2d at 1059 ("smaller firms may be subject to their own prevailing market rate").

[57] *McDonald v. Pension Plan of the NYSA-ILA Pension Trust Fund*, 450 F.3d 91, 98 n.6 (2d Cir. 2006) (emphasis added).

[58] *DiFilippo*, 759 F.2d at 234 (discussing civil rights litigants).

[59] *United States Football League v. National Football League*, 887 F.2d 408, 413 (2d Cir. 1989) (awarding $5,500,000 in fees on $3 recovery), cited in *Grant v. Martinez*, 973 F.2d 96, 101 (2d Cir. 1992). *See* Laura B. Bartell, *Taxation of Costs and Awards of Expenses in Federal Court*, 101 F.R.D. 553, 560-62 (1984).

local attorneys who practice in this Courthouse, the requested rates of Class

Counsel here – $550 an hour for Mr. Bromberg and $400 an hour for Ms. Karni –

represent the prevailing rates in this Court.

### E.  Attorney fees incurred in connection with the fee petition are recoverable.

Attorney fees incurred pursuing a motion for an award of attorney fees are

recoverable.[60] The time spent pursuing fees is to be awarded so that the fees

awarded under a statute are not diluted.[61]

### F.  An upward adjustment should be made, but is not necessary here because Plaintiff's fees and costs exceed the agreed-upon amount

The burden of proof is on the opponent to present specific evidence that a

lower amount is appropriate.[62] Here, as detailed in the accompanying Declarations

of Brian L. Bromberg and Dana Karni, Plaintiff's lodestar and costs combined –

including the travel-time and the costs for Mr. Bromberg to travel to and stay in

Houston – exceed $25,000.  The billing rates on this case are $550 an hour for Mr.

Bromberg and $400 an hour for Ms. Karni. After considerable negotiation, Plaintiff

agreed an award of attorney fees and costs up to $25,000, subject to the Court's

approval.

This case settled due to Plaintiff's attorneys' knowledge and expertise in the

---

[60] *Johnson v. State of Miss.*, 606 F.2d 635, 638 (5th Cir. 1979).

[61] *Id.*

[62] *See, e.g.*, *United States Football League*, 887 F.2d at 413; *Gates v. Deukmejian*, 987 F.2d 1392, 1397-98 (9th Cir. 1992) (fee opponent must submit evidence); *Brinker v. Giuffrida*, 798 F.2d 661, 668 (3d Cir. 1986) ("[T]here is ordinarily no reason for a court to disregard uncontested affidavits of a fee applicant").

field of consumer-protection law. With the exception of Plaintiff's attorneys, few law firms are regularly prosecuting FDCPA cases to class certification. Many, if not most, such cases settle individually. Large firms will not take class cases under the FDCPA because of the cap on statutory damages and small firms rarely prosecute such cases effectively. Because the lodestar and costs exceed $25,000, Plaintiff is not seeking a multiplier. A multiplier would, however, be merited for having achieved extraordinary results.[63]

Moreover, under the adjustment factors identified in the Fifth Circuit case of *Johnson v. Georgia Highway Express, Inc.*, the fees and costs agreed upon by the parties are fair and reasonable.[64] And in reviewing the factors below, Class Counsel asks that Your Honor bear in mind that the recovery here is rare and exceptional are the results obtained here: few consumers file and successfully prosecute class actions under the FDCPA in this Court. A multiplier would be warranted, but for the fact that the lodestar and costs exceed $25,000.[65] With these rare and exceptional results in mind, Plaintiffs now proceed to analyze the requested fees

---

[63] *Vizcaino v. Microsoft*, 290 F.3d 1043 (9th Cir. 2002) (surveying many decisions awarding multipliers and concluding that multipliers between 1 and 4 are the norm in common fund cases); *In re Cendent Corp. PRIDES Litig.*, 243 F.3d 722, 742 (3d Cir. 2001) ("'multiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied.'"); *New England Carpenters Health Benefits Fund v. First Databank, Inc.*, No. 05-11148, 2009 WL 2408560, at *2 (D. Mass. Aug. 3, 2009) (approving multiplier of about 8.3 times lodestar, where attorney fees represented 20% of the common fund); *In re Beverly Hills Fire Litig.*, 639 F.Supp. 915 (E.D.Ky, 1986) (five); *In re Cenco Inc. Sec. Litig.*, 519 F.Supp. 322 (N.D.Ill. 1981) (multiplier of four to lead firm).
[64] *Johnson*, 488 F.2d at 717-719.
[65] *Perdue*, 559 U.S. 542, 552, 130 S.Ct. 1662, 1673, 176 L.Ed.2d 494 ("enhancements may be awarded in 'rare' and 'exceptional' circumstances").

under the *Johnson* factors.

**1. The time and labor required.**

The Parties engaged in substantial discovery and negotiations before settling. Plaintiffs submit that the time expended prosecuting this action is warranted given the protracted negotiations that resulted in the settlement. Moreover, the time expended was modest under the circumstances due to counsel's experience in consumer-protection litigation.

Class Counsel hail from small firms, and they do the bulk of the work on their own. As one district court has noted:

> . . . attorneys, like plaintiff's counsel, operating either as solo practitioners or in small firms, often lack the resources to retain a large staff of junior lawyers who could handle (certain more clerically related) tasks more economically. Denying plaintiffs compensation for these tasks would unfairly punish plaintiffs and their counsel for not staffing this case as if they had the manpower of a major law firm.[66]

Therefore, the time spent by Plaintiffs' counsel to complete this litigation, as set forth in the attachments hereto, warrants upward adjustment of the lodestar. Furthermore, when the settlement checks are sent out, Class Counsel anticipates, based on experience, that Ms. Karni and Mr. Bromberg will receive numerous inquiries from class members.

**2. The novelty and difficulty of the questions.**

_____

[66] *Bailey*, 839 F. Supp. at 891; *see also, Withers v. Eveland*, 997 F. Supp. at 740, and *Morgan v. Credit Adjustment Board*, 1998 U.S. Dist. Lexis 8135 at 5.

The questions presented by this case were not routine. The key question here is whether the violation alleged would be subject to the so-called bona fide error defense. Fighting this defense would have required extensive discovery that only experienced counsel could bring to bear. Therefore, the novelty and difficulty of the issues provide no basis to adjust the lodestar downward, but does provide a basis for adjusting it upwards.  Even if the case had been entirely straightforward, the lodestar amount may not be reduced.[67]

### 3. The skill requisite to perform the legal services properly.

Successful litigation of FDCPA class actions requires skill and familiarity with the issues involved. Plaintiffs' counsel knows of very few attorneys who purport to be able to litigate plaintiffs' consumer-protection cases on a class-wide basis. Most attorneys do not recognize the legal issues involved in such cases, and requests for representation are generally turned away by members of the Bar. And in this Court, few FDCPA are pursued to class-certification. Because of the skill of Plaintiff's counsel and the rarity of successfully prosecuting FDCPA class actions in this district, Plaintiffs request an upward adjustment of the lodestar.

### 4. The preclusion of other employment.

The time spent on this case was not, and could not be, spent at the same time on other cases. There are substantial opportunity costs in preparing the necessary documentation and briefing to represent plaintiffs in a contingency or fee-shifting case in federal court. The substantial amount of time expended on Plaintiffs' behalf

20

---

[67] *DiFilippo*, 759 F.2d at 235.

was time which would have been spent on other matters, had this case not been filed or litigated to this extent.

Therefore, it is appropriate to consider that whenever an attorney takes a case, he or she does so to the exclusion of accepting other work. Plaintiffs' counsel expended the requisite amount of time reviewing the case and litigating it to its conclusion, to the exclusion of helping other consumers. Thus, some consumers did not receive counsel's help so that Mr. Heironimus and the Class could. Because the time spent on this case would have been expended on other matters, this factor provides a basis for an upward adjustment of the lodestar.

### 5. The customary fee for like work in the community.

Plaintiff's fee request is well within the range of similar work and is an amount recognized by other courts. The fee is thus reasonable and the going rate for like work in this area. But the involvement of Plaintiff's counsel in this case undoubtedly is the primary factor that led to settlement on a class basis. Therefore, Plaintiff requests an upward adjustment of the lodestar. This *Johnson* factor is addressed in greater detail below.

### 6. Whether the fee is fixed or contingent.

An award of attorney fees in a contingency fee matter should compensate counsel for the risk of receiving no compensation. In consumer-protection cases, the fee is very often contingent – not on the amount of damages, but on an award by the court or agreement by the opponent. In a private attorney general case, Congress encourages counsel to sue, recognizing that counsel cannot charge the client an

21

hourly fee, because the fee may be out of proportion to the recovery. If contingent, the fee award should compensate counsel for the risk of receiving no compensation. "Lawyers operating in the marketplace can be expected to charge a higher hourly rate when their compensation is contingent on success than when they will be promptly paid, win or lose." [68] For example, Mr. Bromberg was also involved in the FDCPA case entitled *Lemire v. Wolpoff & Abramson, P.C.*[69] There the plaintiffs settled the case after prevailing on a disputed motion to certify the class. The settlement provided for a negotiated attorney fee of $53,000. Notwithstanding the successful work performed in that case, the defendant dissolved, making collection of the settlement amount impracticable, and necessitating decertification.

The availability of an award of reasonable fees is doubly important in Consumer Credit Protection Act matters, such as Fair Debt Collections Practices Act and Fair Credit Reporting Act cases, where successful statutory damage awards may be limited to $1,000 and actual damages may be de minimis, nonexistent or limited. "Ignoring reasonable contingent fee arrangements or automatically reducing them would impair claimants' ability to secure representation."[70] "The point remains that contingency fees are an acknowledged feature of our legal landscape, approved by legislative and judicial bodies alike, that help secure for the impecunious access both to counsel and to court."[71]

---

[68] *Blum*, 465 U.S. at 903.
[69] *Lemire v. Wolpoff & Abramson, P.C.*, D. Conn., Docket No. 08-cv-249(CSH).
[70] *In re Abrams & Abrams*, 605 F.3d at 245 (citing *Wells v. Sullivan*, 907 F.2d 367, 371 (2d Cir. 1990)). 22
[71] *Id.*

Plaintiff's counsel was willing to provide services to the named plaintiff and members of the class whether they win or lose the case and whether or not counsel got paid for that work. This *Johnson* factor provides no basis here for any change in the lodestar amount but provides ample support for approval of a lodestar amount at the high end of market compensation for legal counsel. "Successful outcomes often make risks seem less risky in hindsight than they were at the time, and the court should not have ignored those risks merely because at some later point in litigation the defendant found it in its interest to settle."[72]

Class Counsel was willing to provide services to Plaintiffs whether they won or lost their cases and whether counsel would receive compensation for that work. This factor justifies an upward adjustment of the lodestar.

### 7. Time limitations imposed by the client or the circumstances.

The time limits here were imposed by the applicable statutes of limitations, the Rules, and those set by the Court. Because of the effects of Hurricane Harvey on Ms. Karni, her family, and her home, which were covered by a reporter from the *New York Times*, many of the deadlines on this case had to be extended, so this factor was not as important as it might have otherwise been.[73] Therefore, this *Johnson* factor does not warrant an adjustment in either direction.

### 8. The amount involved and the results obtained.

---

[72] *Id.*, at 248.

[73] *See* "Harvey and Irma Wiped Out Our Kitchens. Still, We Cook." *New York Times*, September 19, 2017, available at https://www.nytimes.com/2017/09/19/dining/houston-hurricane-harvey-kitchens.html.

The results obtained for the Plaintiffs were significant, and they reflect counsel's substantial efforts in preparing and litigating this matter. Plaintiffs have obtained a monetary recovery for each class member that is high for a "letter violation." This is an extraordinary result, warranting an upward adjustment of the lodestar.

### 9. The experience, reputation and ability of the attorney.

One of Plaintiff's attorneys, Dana Karni, has been practicing for 14 years, is admitted in Texas, and has an established reputation as a consumer-protection attorney.[74] Most recently, Ms. Karni won a large jury-verdict against a car dealership in a Federal Odometer Act case that garnered national attention. Plaintiff's other attorney, Brian L. Bromberg, has been practicing for 27 years, is admitted in New York, New Jersey, and California, and has established a strong reputation as a consumer-protection attorney.[75] Even though Mr. Bromberg lives and works in New York City, Ms. Karni and Mr. Heironimus asked him to participate in this case because of his experience in litigating FDCPA class actions and because there are no consumer-side attorneys in Houston who regularly litigated class actions under the FDCPA. (Mr. Bromberg is frequently asked by attorneys in other cities and states to assist in class actions and he has successfully helped prosecute such cases.) Mr. Bromberg also agreed to co-counsel the case because one of the defendants, Cavalry Portfolio Services, LLC, is in Westchester

---

[74] *See* Declaration of Dana Karni.          24
[75] *See* Declaration of Brian L. Bromberg.

County, New York, which is within the jurisdiction of the Southern District of New York, so fees and costs could be reduced by holding some of the depositions in New York City or in Westchester. Having Mr. Bromberg involved in the case also helped speed up case-resolution, because he has settled several class actions with Defendants' attorney, Manuel Newburger, Esq., in the past. These factors warrant an upward adjustment of the lodestar.

**10. The undesirability of the case.**

There are very few attorneys who have the knowledge, ability, and willingness to represent consumers in this area of law. Most attorneys are unwilling to take the risk of large investments of time for what appear at first blush to be minor, small dollar cases. Very few attorneys regularly prosecute FDCPA cases to conclusion as class actions. Searches on Westlaw and PACER will reveal that a substantial number of successful certifications of a class under the FDCPA have involved Mr. Bromberg as class counsel. Many other attorneys will file such cases as class actions, but few push them to certification. (Mr. Bromberg is also willing to push cases beyond the district-court level, frequently taking cases up on appeal.) Accordingly, this factor, too, warrants an upward modification of the lodestar.

**11. The nature and length of the professional relationship with the client.**

Mr. Heironimus retained his attorneys specifically to pursue the specialized consumer-protection laws at issue. Plaintiff sought them out because of their legal abilities and reputations in this area of the law. Such representation is limited to consumer-protection claims, which are episodic rather than ongoing. Unlike their

big-firm brethren, consumer attorneys cannot rely on hefty retainers from paying institutional clients or insurance companies over many years. Therefore, this *Johnson* factor warrants an upward modification.

### 12. Awards in similar cases.

There are few reported cases in Texas discussing attorney fee awards in FDCPA class actions. Courts recognize that fee awards are to mimic the marketplace. Thus, "[p]aying counsel in FDCPA cases at rates lower than those they can obtain in the marketplace is inconsistent with the congressional desire to enforce the FDCPA through private actions, and therefore misapplies the law."[76] In any event, the results achieved here warrant an upward modification of the lodestar.

[76] *Tolentino*, 46 F.3d at 653; *Zagorski*, 128 F.3d 1164.

Conclusion

The Parties have reached a Settlement in this case that provides a genuine benefit to the Class Members. The Settlement is an excellent result. Each Class Member will receive a substantial recovery of $100. In addition, the terms of the Settlement as well as the circumstances surrounding negotiations and its elimination of further costs caused by litigating this case through trial and appeal satisfy the Fifth Circuit's strictures for final approval. Accordingly, Plaintiffs ask the Court for an Order approving the Settlement and Class Counsel's request for attorney fees and costs of $25,000.

Dated: August 27, 2018

PLAINTIFF, JAMES HEIRONIMUS,
Individually, And On Behalf Of the Class,

By:  /s/ Brian L. Bromberg
     Brian L. Bromberg

27